579 F.2d 764
 NEW JERSEY EDUCATION ASSOCIATION, Paterson Education
Association, Camden Education Association, Education
Association of Passaic, Newark Teachers Association, West
New York Education Association, Union City Education
Association, New Jersey Corporations, Jose Yi and Manny
DePara, Appellants,
v.
Fred G. BURKE, Commissioner of Education, as Commissioner
and Individually, Ruth H. Mancuso, President of the New
Jersey State board of Education, as President and
Individually and the New Jersey State Board of Education.
 No. 77-1828.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 24, 1978.
Decided May 3, 1978.
 
 William S. Greenberg, Greenberg & Mellk, Trenton, N. J., for appellants.
 William F. Hyland, Atty. Gen. of N. J., Trenton, N. J., Erminie Conley, Deputy Atty. Gen., Trenton, N. J., of counsel, Mark D. Schorr, Deputy Atty. Gen., on the brief, for appellees.
 Before ADAMS and HIGGINBOTHAM, Circuit Judges, and BECHTLE, District Judge.*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Legal precepts tend to expand, inexorably and sometimes imperceptibly. This is so, at least in part, because a broadly-formulated legal principle is by its very nature applicable to a wide range of situations. In any particular case, advocacy impels each party to claim the benefit of a potentially applicable doctrine, and in the absence of countervailing principles, consistency leads courts to decide in accordance with the suggested rule. But as a doctrine travels beyond the circumstances which generated it, the reasons which gave rise to that doctrine grow more attenuated, and the court is progressively more likely to encounter off-setting policies not present in the original application.
 
 
 2
 The abstention doctrine of Younger v. Harris has undergone such an expansion in recent years, as its equitable barrier to federal intrusion upon pending state prosecutions has been broadened to encompass a variety of other proceedings. In the present case, where we are called upon to review the application of Younger to a civil proceeding in which the state is a defendant, we must determine whether, in this new setting the policies undergirding Younger are sufficiently applicable to warrant further extension of the rule.
 
 A. THE FACTS
 
 3
 On September 15, 1976, the New Jersey State Board of Education amended regulations governing the qualifications of teachers in bilingual/bicultural education programs so as to require that all teachers whether or not they held tenure attain fluency in English, even if their teaching is conducted in Spanish. A month later, a statutory appeal from those regulations was filed in the New Jersey Superior Court on behalf of a class consisting of all bilingual/bicultural education teachers in New Jersey.
 
 
 4
 Upon being assured that no teacher would be terminated as a result of a denial of interlocutory relief, the Superior Court, without prejudice, denied a motion "for Emergency Ad Interim Stay of Enforcement". On November 17, 1976, the Superior Court again denied a motion for interim relief without prejudice.
 
 
 5
 The class thereupon, on November 22, 1976, filed an action in the New Jersey District Court. The federal action challenged the regulations under 42 U.S.C. § 1983,[1] on a number of constitutional grounds, and requested injunctive relief and declaratory judgment. After a hearing held on April 22, 1977, Judge George Barlow dismissed the complaint, on the ground that Younger v. Harris[2] interdicted injunctive relief, despite the teachers' offer to dismiss their state court action.[3] An appeal from that dismissal was timely filed.
 
 
 6
 In the interval between Judge Barlow's order and the oral argument before us, there were several relevant developments in the state courts. Thus, on April 25, 1977, the New Jersey Superior Court granted a stay against the operation of the challenged regulation. However, on July 12, 1977, the Superior Court sustained the regulations in a three-page per curiam opinion. That opinion, in addition to rejecting a number of purely state law challenges, held that the regulations were not "arbitrary or unreasonable" and went on to state:
 
 
 7
 To the extent appellants are concerned with that which they describe as an "irrefutable presumption," disfavored in law . . . we observe that the result in Berger v. Board of Psychologist Examiners (172 U.S.App.D.C. 396), 521 F.2d 1056 (D.C.Cir.1975) would unquestionably have been different had Berger there had the opportunity for individual review provided here. . . . We leave the application of the regulations to any individual to the particular record he established in such a case.[4]
 
 
 8
 The teachers' request for certification was denied by the New Jersey Supreme Court, and no attempt was made to seek review in the United States Supreme Court.
 
 
 9
 New Jersey now contends that the appeal from the district court should be dismissed on the grounds of Res judicata in light of the New Jersey court's actions.[5]
 
 
 10
 Two issues are therefore presented in this proceeding: (1) the propriety of Judge Barlow's dismissal of the federal action on Younger grounds, and (2) the Res judicata effect on the federal action of the subsequent state court determination.
 
 B. YOUNGER ABSTENTION
 1. The Realm of Younger
 
 11
 Judge Barlow decided this case after the Supreme Court handed down Juidice v. Vail.[6] Based on the holding in Juidice that Younger forbade an injunction against state contempt proceedings, even though such proceedings arose out of a dispute between private parties, Judge Barlow concluded that "because the plaintiffs have at least some prospect of vindicating their constitutional rights in the state court, this Court will not intervene in the controversy."[7]
 
 
 12
 Such a declaration would represent a significant extension of the Younger doctrine. The heart of Younger lay in the area of a pending criminal prosecution. The "traditional reluctance" of courts of equity to enjoin on-going criminal proceedings[8] was combined with the somewhat distinct interest of comity, that federal courts not interfere unnecessarily with a state's attempts to enforce its criminal law in its own courts.[9] The result was a bar to federal interference in on-going state prosecutions, absent extraordinary circumstances. In contrast, the requested relief in the present controversy would affect a wholly civil proceeding brought by a private litigant. This distinction in our view takes the case before us outside the ambit of Younger.[10]
 
 
 13
 Juidice is the only case in which the Supreme Court has accorded Younger deference to a private action in a state court. It is, moreover, one of only three cases in which Younger has been applied by the Supreme Court outside the domain of criminal proceedings.[11] And the facts of Juidice may well make it Sui generis.
 
 
 14
 Federal tribunals, the Court in Juidice decided, could not enjoin a state court's enforcement of a contempt citation. The contempt power used by the state courts to assure respect for their workings lies, as the Court in Juidice specifically noted, "at the core of the administration of a State's judicial system."[12] Direct interference with a state contempt citation, even though civil in nature, is close to the type of intervention into state criminal processes condemned in Younger ; it invades the right of the state to vindicate its authority in its own courts.[13] To bar such an incursion carries few implications for the broad range of civil proceedings, a fact which the five-man majority in Juidice explicitly recognized.[14]
 
 
 15
 Similarly, in Trainor v. Hernandez,[15] which held Younger applicable to an action taken by a state "in its sovereign capacity" to recoup fraudulently obtained welfare benefits, Justice White, for a five-man majority, pretermitted the question whether "Younger principles apply to all civil litigation."[16] Justice Blackmun, the fifth subscriber to the majority's position in Trainor, wrote a separate concurrence. In it, he reaffirmed the language of Justice Black's original formulation in Younger, asserting that "the concept does not mean blind deference to states' rights" but only the avoidance of "unduly interfere with the legitimate activities of the state."[17] Pursuing what he described as the "requirement of balancing federal and state interests,"[18] Justice Blackmun noted that except for Huffman and Juidice, Younger had previously been limited to criminal proceedings. The factual situations in Huffman and Juidice, he declared, were of special interest to the state.[19]
 
 
 16
 Regarding the proceeding before him, Blackmun wrote:[20]
 
 
 17
 I, too, find significant the fact that the state was a party in its sovereign capacity to both the state suit and the federal suit. Ante at 444 (97 S.Ct. at 1918). Here, I emphasize the importance of the fact that the state interest in the pending proceeding was substantial. In my view, the fact that the state had the option of proceeding either civilly or criminally to impose sanctions . . . demonstrates that the underlying state interest is of the same order of importance as the interest in Younger and Huffman. The propriety of abstention should not depend on the state's choice to vindicate its interest by a less drastic, or perhaps more lenient route.
 
 
 18
 Undertaking the type of balancing employed by Justice Blackmun, who cast the deciding vote for reversal in both Juidice and Trainor, it seems to us that the policies weighing in favor of Younger abstention have been significantly diluted in this case. Unlike Trainor and Huffman, the statute at issue here is unrelated to the enforcement of the state's criminal laws; indeed, citizens rather than the government initiated action in the New Jersey state court. Neither the traditional equitable aversion toward intermeddling in criminal processes, nor the state's interest in enforcing its laws in its own forum is present.[21]
 
 
 19
 In further contrast to Juidice, the adjudication of the constitutionality of administrative regulations is not a "core" function of the state judiciary.[22] Federal equitable action addressed to administrative regulations would not ordinarily endanger the smooth functioning of the state judicial system. Moreover, the relief sought includes a declaration of rights and an injunction against state administrative agencies, rather than an injunction against state court action, a procedure which the plaintiff offered to withdraw.
 
 
 20
 Thus, the result reached by Judge Barlow is not compelled by the holdings of the previous cases in the Younger line. And, as explicated below, other principles counsel against such an extension.
 
 
 21
 2. Countervailing Considerations; The Values of Federal Jurisdiction
 
 
 22
 Judge Barlow's opinion suggests that Younger bars federal intervention whenever a remedy might be available in a state criminal or civil action. But such an exhaustion doctrine has been explicitly rejected by the Supreme Court in the context of § 1983 proceedings. In Monroe v. Pape,[23] the Court held that:
 
 
 23
 It is no answer (to a suit under § 1983) that the state has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy and the latter need not be first sought and refused before the federal one is invoked.
 
 
 24
 The rule of Monroe, we believe, has not been debilitated by the development of Younger.[24]
 
 
 25
 But even if Judge Barlow's interpretation of Younger were limited to erecting a rampart against federal adjudication whenever a state case is pending, it would be at odds with a basic premise of our federal judicial system. It is fundamental that where Congress has granted concurrent jurisdiction, a plaintiff is free to bring suit in both the state and federal forums for the same cause of action. As Justice Rehnquist noted this term:
 
 
 26
 The traditional notion is that In personam actions in federal and state court may proceed concurrently, without interference from either court . . . . We have never viewed parallel In personam actions as interfering with the jurisdiction of either court; as we stated in Kline v. Burke Construction Co., 260 U.S. 226, (43 S.Ct. 79, 67 L.Ed. 226) (1922):
 
 
 27
 (A)n action brought to enforce (a personal liability) Does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of Res adjudicata . . . ."[25]
 
 
 28
 According to Justice Black's seminal opinion, the Younger doctrine finds its roots in the "slogan, 'Our Federalism,' born in the early struggling days of our Union of States."[26] Since the traditional right of the plaintiff to proceed simultaneously in state and federal forums has an equally long lineage it would seem to follow that the plaintiffs' right is not alien to the counsels of Younger, and therefore that abstention was improper in this case.[27]
 
 
 29
 Finally, we note that the more broadly the Younger doctrine is pressed, the more it encroaches upon explicit congressional grants of equitable jurisdiction. The extreme of the extension would be an assertion that Younger precludes federal injunctions whenever any state proceeding is pending. Such an approach would seem clearly inappropriate. Since 1793 Congress has specifically prohibited by statute now codified as 28 U.S.C. § 2283 the issuance of federal injunctions to stay state court actions except in limited circumstances.[28] If the principles of federalism and comity bar issuance of such injunctions in all civil cases, § 2283 would be superfluous. Moreover, such an expansion of Younger would be repugnant to those federal statutes which "expressly authorize" injunctions to stay proceedings in a state court.[29]
 
 
 30
 A more moderate extension would still generate tension with Congressional policies. And while such discord may not alone preclude expansion of Younger's injunctive bar, frustration of Congressional policy weights heavily against it.
 
 
 31
 Here, the appellants claimed a violation of their constitutional rights under 42 U.S.C. § 1983, and invoked federal jurisdiction under 28 U.S.C. § 1343(3). In Mitchum v. Foster,[30] without dissent, the Supreme Court held that § 1983 is an expressly authorized exception to the general statutory bar to injunctions against state court proceedings. And in Vendo Co. v. Lektro Vend,[31] all of the members of the Court accepted Mitchum as an authoritative exposition of the law regarding § 1983. The plurality, per Justice Rehnquist, restated the holding in Mitchum:[32]
 
 
 32
 We recounted in detail that statute's history which made it abundantly clear that by its enactment Congress (had) demonstrated its direct and explicit concern to make the federal courts available to protect civil rights against unconstitutional actions of state courts. We summarized our conclusion in these words:
 
 
 33
 This legislative history makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts. Mitchum, 407 U.S. at 242, 92 S.Ct. 2151, at 2162.
 
 
 34
 In light of the policy embodied in § 1983 and reiterated in Vendo, we are most reluctant to stretch the equitable doctrine of Younger beyond its prior boundaries to encompass a situation in which the only pending proceeding is a civil action filed by a federal plaintiff in a state court. As the Supreme Court stated in England v. Board of Medical Examiners,[33] "There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claim can be compelled without his consent and through no fault of his own, to accept instead a state court's determination of those claims."
 
 3. The Balance
 
 35
 Younger and its offspring "express equitable principles of comity and federalism."[34] The application of these principles, in turn, requires "sensitivity to the legitimate interests of both state and national governments"[35] as well as consideration for the rights of litigants. In this case, we review a decision advancing the Younger doctrine well beyond the perimeter which it previously occupied. Such a salient, moreover, thrusts into an area in which both the traditions of our dual court system, and congressional efforts to protect constitutional rights favor the allowance of federal relief. Accordingly, we believe Younger is not controlling.
 
 
 36
 Our conclusion is strengthened by the sole Supreme Court case which we have found to be directly on point. In Sweet Briar Institute v. Button,[36] a college brought suit in federal court to enjoin state officials from enforcing a racially restrictive covenant contained in a bequest to the college. In view of the fact that the college's constitutional challenges had been rejected in a pending action in state court, the federal tribunal stated that policies of comity and Res judicata precluded its entertaining the suit. Although the district court asserted that dismissal was warranted, it deferred such action to await the final resolution of the state proceeding.
 
 
 37
 On appeal, the Supreme Court reversed in a brief per curiam opinion,[37] citing England and Kline, and remanded for consideration on the merits.[38] Though decided before Younger, Sweet Briar is a substantive adjudication and it is procedurally identical with the case before us. It is thus persuasive support for the conclusion that the dismissal by the district court here was improper.
 
 C. THE IMPACT OF THE STATE COURT JUDGMENT
 
 38
 The determination that Younger did not bar adjudication by the district court, however, carries us only part of the distance toward resolving the issues of this case. If Judge Barlow improperly dismissed on Younger grounds as we hold he did we must deal with the question of the proper effect to be given to the state court ruling.
 
 1. The Rule
 
 39
 Younger, itself, erects a barrier against federal action in the face of a pending state prosecution. But Younger's definition of "pending" prosecution has also manifested a proclivity to cast its shadow broadly. Language in Huffman v. Pursue, Ltd.,[39] where federal action was foreclosed by a state tribunal's ruling which the federal plaintiff declined to appeal, may be read to imply that the principles underlying Younger require a federal court to give broad preclusive effect to unappealed state court judgments. Such an intimation, however, is substantially weakened by later cases.
 
 
 40
 In Ellis v. Dyson,[40] the plaintiff had been convicted in a municipal court proceeding of the crime of loitering. Rather than appeal his conviction and commence a trial De novo, the plaintiff brought a declaratory judgment action in federal court challenging the statute under which he had been prosecuted. On appeal the Supreme Court declined to dismiss on Younger grounds.
 
 
 41
 More recently, in Wooley v. Maynard,[41] a plaintiff challenged a New Hampshire ordinance forbidding the defacing of the motto "live free or die" on license plates. Although he had three times pleaded not guilty on the ground that displaying the motto violated his religious convictions, the plaintiff had thrice been found guilty of misdemeanors for covering the motto, and had declined to appeal his convictions. Rather, he brought an action for an injunction in federal court. The Supreme Court upheld the issuance of an injunction against further enforcement of the statute, commenting that the Huffman result arose out of the fact that the suit there attempted to enjoin the enforcement of a state court decree that ordered the plaintiff's theater closed as a public nuisance. Thus, not only was Younger held to be inapposite, but an unappealed judgment resulting from a previous suit raising identical issues was apparently not given binding effect.[42]
 
 
 42
 Although Huffman is not controlling, the question here should still be resolved on the basis of principles which take into account the nature of our federal court system and the constitutional imperatives which it protects. Rather than Huffman, the applicable precedent is England v. Louisiana State Board of Medical Examiners.[43] In England, the plaintiffs had been remitted under Pullman abstention to a Louisiana state court. After the plaintiffs' return to federal court following state litigation, the United States Supreme Court refused to grant preclusive effect on a federal constitutional issue to the judgment of the Louisiana Supreme Court. The United States Supreme Court stressed the importance of the "right to litigate his federal claims fully in the federal courts,"[44] and the potentially decisive importance of federal fact-finding.[45] To deprive a litigant of a federal forum against his will, the Court declared, would "be at war with the unqualified terms in which Congress, pursuant to constitutional authorization, has conferred specific categories of jurisdiction . . . ."[46] Instead, it held, "the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily . . . (and) fully litigated his federal claims in state courts."[47]
 
 
 43
 England implies that the state court determination in this case should not govern the issues here unless the plaintiffs could be said to have waived their rights to litigate in federal court by fully and unreservedly litigating their claims in state court.
 
 
 44
 The preclusive effect of prior state court judgments on § 1983 suits has, however, evoked a spectrum of overlapping and inconsistent precedent and commentary.[48] One relatively clear line of cases, looking to the principles of Res judicata which govern the effect of prior judgments generally holds that where "a federal constitutional claim is based on the same asserted wrong (which) was the subject of a (prior) state action, and where the parties are the same, Res judicata will bar the federal constitutional claim, whether it was asserted in state court or not."[49]
 
 
 45
 Such an interpretation is not compelled by the terms of the England decision. Indeed, England's broad discussion of the right to a federal forum and the necessity of "unreserved litigation" to waive that right would seem to point to an equally broad right to reserve federal constitutional claims.[50] And while a policy of discouraging vexatious litigation and conserving judicial resources can apply to the interaction between state and federal decisions as well as to the binding effect of a judgment rendered by the same judicial system, a restrictive concept to the right to a federal forum has significant disadvantages. To hold that state court litigation bars a federal forum from deciding any claims which might have been raised before the state court would turn the state court into quicksand. It would not only serve as a trap for unwary plaintiffs who desire a federal tribunal, but encourage competently represented litigants to forego any venture into state jurisdiction to exhaust state administrative and judicial procedures on pain of losing their right to a federal hearing. Such results are hardly salutary.[51]
 
 
 46
 In our view, at least where a federal suit is commenced before a final decision by the state court, the proper rule is that enunciated by the Second and Seventh Circuits: a state court judgment forecloses a § 1983 litigant from raising grievances in federal court only if such claims have been pressed before, and decided by, a state tribunal.[52]
 
 
 47
 Such a rule avoids the tendency of the "could-have-litigated" test to discourage the use of state forums to determine matters of state law, while at the same time giving due regard to matters actually decided by the state tribunals. Further, it responds to the particular concern for assuring the right to a federal forum in which to assert constitutional claims. And finally, it captures the substance of the Supreme Court's holding that:
 
 
 48
 If a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there And has them decided there . . . he has elected to forego his right to return to the District Court.[53]2. The Application
 
 
 49
 The question with regard to the New Jersey judgment thus is whether the plaintiffs in this case "freely and without reservation" litigated their grievances in state court. We conclude that such litigation could be said to have occurred only with respect to a portion of their claims.
 
 
 50
 As noted above, the filing of a federal declaratory and injunctive action here occurred before any determination by the state court other than denial of preliminary relief without prejudice. In addition, the plaintiffs offered to dismiss the state court action. But this offer was rejected, and the plaintiffs were remitted to their state court suit on twin Younger/Pullman grounds. The situation is therefore analogous to the England paradigm, in that the federal action, when filed, impinged upon no final state judgments. Accordingly, insofar as plaintiffs did not "fully litigate" the issues in state court, they should be permitted to return to the federal forum.
 
 
 51
 There is no evidence that the contentions regarding Ex post facto violations, unconstitutional impairment of the obligation of contracts and uncompensated taking of private property were pressed in the state proceedings. Indeed, this is admitted by the defendants in their brief in support of their motion to dismiss.[54] With respect to these claims, the rule we adopt mandates federal consideration on the merits.
 
 
 52
 Plaintiffs' due process and equal protection challenges present a more difficult problem. In their brief before the New Jersey Superior Court, the plaintiffs pressed these contentions in terms quite similar to those asserted before us.[55] The New Jersey Court apparently resolved these issues against the plaintiffs on the merits.[56]
 
 
 53
 The conditions for an England waiver consequently may well be met on these points, and a federal court may be barred from allowing relitigation of the equal protection and due process challenges.[57] However, Res judicata is an affirmative defense, dependent here on the factual issue of what submissions were actually made to the state court. Since we do not have before us a full record, it is appropriate to remand the case to the district court to allow such factual issue to be litigated there in the first instance.
 
 D. CONCLUSION
 
 54
 The district court erred in abstaining on Younger grounds. However, the explicit holdings of the New Jersey courts on plaintiffs' due process and equal protection challenges may be Res judicata, and the dismissal of these claims will be reversed and remanded for the purpose of ascertaining whether such contentions were fully and freely litigated in the state courts. Plaintiffs' remaining claims will be remanded to the district court for proceedings on the merits.
 
 
 
 *
 Louis C. Bechtle, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The complaint alleged violations of the equal protection and due process clauses as well as Ex post facto violations, impairment of the obligations of contact, and uncompensated taking of private property
 
 
 [2]
 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [3]
 Judge Barlow also concluded that it was appropriate for him to abstain from deciding this case under the doctrine of Railroad Commn. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Since questions were raised as to the proper effect to be given to the challenged regulation (E. g. availability of waivers) and the propriety of the regulation on state law grounds, it would seem that Pullman abstention was not inappropriate as a means of avoiding unnecessary decision of constitutional issues. However, Pullman does not authorize dismissal. See American Trial Lawyers v. New Jersey Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) (trial court's dismissal on Pullman grounds reversed; Supreme Court held that "proper course" is to retain jurisdiction). In any event, since a final adjudication of the propriety of the regulations on state law grounds has occurred, the strictures of Pullman have been fulfilled
 
 
 [4]
 76a. The brief submitted in the New Jersey state court case was substantially equivalent on constitutional issues to the one submitted to our Court, raising equal protection, and due process challenges. It did not deal with the allegations in the federal complaint of Ex post facto violations, unconstitutional impairment of the obligation of contracts, or uncompensated taking of private property
 
 
 [5]
 Although New Jersey's motion to dismiss is phrased in terms of a claim of "mootness," discussion of the contention revolves around the assertion that the New Jersey judgments preclude federal litigation
 
 
 [6]
 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1972)
 
 
 [7]
 38a
 
 
 [8]
 Huffman v. Pursue Ltd., 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)
 
 
 [9]
 "Comity" has been defined as the interest in assuring "proper respect for state functions." Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The definition is less than clear cut, but the scope of this interest has not been accurately delineated by subsequent cases
 
 
 [10]
 See, e. g. Bonnet v. Trustees of Schools of Twp. 41, 563 F.2d 831, 834 (7th Cir. 1977) (in diversity action regarding title, Younger does not mandate abstention in favor of parallel state proceedings): Marshall v. Chase Manhattan Bank, 558 F.2d 680, 683-84 (2d Cir. 1977) (Younger does not require abstention in favor of previously commenced state "winding up" proceeding for a corporation)
 
 
 [11]
 See Huffman v. Pursue Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); Cf. Mitchum v. Foster, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (reserving question). The recent extensions of Younger have evoked a significant amount of unfavorable scholarly commentary suggesting that such extensions are unsupported by precedent and policy. E. g. L. Tribe, American Constitutional Law, 152-56 (1978); Fiss, Dombrowski, 86 Yale L.J. 1103 (1977); Soifer & Macgill, The Younger Doctrine: Reconstructing Reconstruction, 55 Texas L.Rev. 1141 (1977); Weinberg, The New Judicial Federalism, 29 Stanford L.Rev. 2291 (1977); Note, Post-Younger Excesses in the Doctrine of Equitable Restraint, A Critical Analysis, 1976 Duke L.Rev. 523; See e. g. Zeigler, An Accommodation of the Younger Doctrine and the Duty of Federal Courts to Enforce Constitutional Safeguards in State Criminal Processes, 125 U.Pa.L.Rev. 266 (1977); Developments in the Law, Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1327-1330 (1977). See generally id. at 1274-1327
 
 
 [12]
 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376; Cf. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967)
 
 
 [13]
 Cf. Gipson v. New Jersey Supreme Court, 558 F.2d 701, 703-04 (3d Cir. 1977) ("In view of the special relationship between state courts and members of their bars, we hold that the doctrine of federal non-interference is appropriate in suits concerning pending state attorney disciplinary proceedings."). But cf. Morial v. Judiciary Committee, 565 F.2d 295, 298-99 (5th Cir. 1977) (En banc ) (Younger does not bar review of requirement that state judges leave the bench before running for office)
 
 
 [14]
 430 U.S., at 336 n. 13, 97 S.Ct., at 1218 ("we save for another day 'the applicability of Younger to all civil litigation' "). But cf. id., at 345 n. *, 97 S.Ct. 1211 (Brennan, J. dissenting) (suggesting that reservation of the applicability of Younger to all civil litigation is "tongue in cheek")
 
 
 [15]
 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977)
 
 
 [16]
 Id. at 444-445 n. 8, 97 S.Ct. at 1919
 
 
 [17]
 Id. at 448, 97 S.Ct. at 1920
 
 
 [18]
 Id. at 448, 97 S.Ct. at 1920
 
 
 [19]
 Id. at 448-449, 97 S.Ct. 1911
 
 
 [20]
 431 U.S. at 449-50, 97 S.Ct. at 1921
 
 
 [21]
 The appellee's brief suggests that the importance of the state's role in providing education, cited in Brown v. Bd. of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954), furnishes justification for invoking the Younger bar. Such an argument uses the words of Brown to mock its substance. Brown's holding sanctioned extensive judicial intervention in educational affairs to vindicate federal rights. We do not understand Younger and its progeny to have cast any aspersions on the viability of Brown
 
 
 [22]
 Cf. Juidice v. Vail, 430 U.S. 327, 335, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)
 
 
 [23]
 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)
 
 
 [24]
 See Zablocki v. Redhail, 434 U.S. 374, 379-380 n. 5, 98 S.Ct. 673, 677, 54 L.Ed.2d 618, 626 (1978) (father need not petition court for exemption to marriage requirement or raise constitutional objection in state court before challenging it in federal court). Moore v. City of East Cleveland, 431 U.S. 494, 497 n. 5, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (exhaustion of zoning variance proceeding not necessary in challenge to constitutionality of ordinance); Ellis v. Dyson, 421 U.S. 426, 432, 95 S.Ct. 1691, 1695, 44 L.Ed.2d 274 (1975) ("Exhaustion of state judicial or administrative remedies in Steffel (V. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)) was ruled not to be necessary, for we have long held that an action under § 1983 is free of that requirement"); Leonard v. City of Columbus, 551 F.2d 974, 978 Aff'd en banc 565 F.2d 957 (5th Cir. 1977) (exhaustion of administrative and judicial remedies not necessary to challenge police firing); Morial v. Judiciary Commission, 565 F.2d 295 (5th Cir. 1977) (En banc ) (Younger inapplicable where no enforcement proceeding is in progress). But cf. Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 140, 51 L.Ed.2d 711 (1977) (availability of state criminal and tort sanctions held to satisfy "due process" required for corporal punishment in schools)
 We have recently surveyed the plethora of decisions rejecting an exhaustion requirement for § 1983. U. S. ex rel. Ricketts v. Lightcap, 567 F.2d 1226, 1229-31 (3d Cir. 1977); See Hochman v. Bd. of Educ., 534 F.2d 1094, 1096-97 (3d Cir. 1976).
 The implication in Huffman v. Pursue Ltd. that Younger mandated exhaustion of state remedies was explained by Wooley v. Maynard, 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977), as applying only when an attempt is made to "annul the results of a state trial."
 
 
 [25]
 Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 642, 97 S.Ct. 2881, 2892, 53 L.Ed.2d 1009 (1977) (Plurality opinion, per Rehnquist, J.) Vendo Co. involved the issue of whether a federal court was "expressly authorized" by the federal antitrust laws to issue an injunction against pending state proceedings. In evaluating the question of whether such an injunction was necessary "in aid of" federal jurisdiction, Justice Rehnquist reaffirmed the general right of a litigant to proceed simultaneously in state and federal tribunals. See Stanton v. Embrey, 93 U.S. 548, 554, 23 L.Ed. 983 (1876) (rejecting contention that pendency of prior state court suit bars federal action); Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1963) (suit filed in federal court to relitigate same issues, state court enjoined plaintiffs, holding injunction invalid. "Plaintiffs in the second suit chose to file that case in the federal court. They had a right to do this, a right which is theirs by reason of congressional enactments passed pursuant to congressional policy. And whether or not plea of Res judicata in the second suit would be good is a question for the federal court to decide"); Hart & Wechsler, Federal Courts and the Federal System 1234-35 (2d ed. 1973)
 Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) is not to the contrary, at least in the circumstances of this case. There, where an issue was pending in a state court proceeding, the dismissal of a declaratory judgment was remanded to the district court to consider whether "the question in controversy between the parties . . . can better be settled in the proceeding pending in state court." Id. at 495, 62 S.Ct. at 1176. This disposition, however, was premised on the fact that the "issues were not governed by federal law." Id.
 
 
 [26]
 401 U.S. at 44-45, 91 S.Ct. at 751
 
 
 [27]
 The venerable case of McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910), which we have recently cited as controlling, Cotler v. Inter-County Orthopedic Assn., 526 F.2d 537 (3d Cir. 1975), would seem to dispose of the contention that established canons of comity bar declaratory judgment in the action before us. In McClellan, the plaintiffs, who claimed to be heirs at law, and who had previously been denied letters of administration in an on-going state probate proceeding, brought suit in federal court to have themselves declared the owners of an estate which had passed intestate. At the application of the state, the federal court granted a stay to allow the state attorney general to bring an action in state court to assert the state's claims. The Supreme Court reversed. Despite the pendency of the probate proceeding and the expressed state interest, the McClellan Court said (217 U.S. at 281, 30 S.Ct. at 504):
 It, therefore, appeared upon the record . . . that the circuit court had practically abandoned its jurisdiction over a case of which it had cognizance and turned the matter over for adjudication to a state court. This, it has been steadily held, a federal court may not do. Chicot County v. Sherwood, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546.
 Cf. Town of Lockport v. Citizens for Community Action, 430 U.S. 259, 264, 97 S.Ct. 1047, 51 L.Ed.2d 313 (1977) (subsequently filed state civil suit does not invoke Younger abstention).
 
 
 [28]
 The originally unqualified prohibition contained in the Act of March 2, 1793, Ch. 22 § 5, 1 Stat. 334, was subjected over the years to a number of judicially and legislatively created exceptions. See generally Redish, The Anti-Injunction Statute Reconsidered, 44 U.Chi.L.Rev. 717, 719-738 (1977)
 
 
 [29]
 In 1874, the anti-injunction statute was amended to provide an exception where an injunction was authorized by any law relating to bankruptcy proceedings. Revised Statutes of 1874, Ch. 12 § 720, 18 Stat. 134. A 1948 revision, currently enshrined in 28 U.S.C. § 2283 (1970), extended the exception to injunctions "expressly authorized" by any Act of Congress revision. See Mitchum v. Foster, 407 U.S. 225, 233-38, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Cf. Vendo Co. v. Lektro Vend, 433 U.S. 623, 639 n. 9, 97 S.Ct. 2881, 2891, 53 L.Ed.2d 1009 (1977) (Rehnquist, J. for a plurality) ("If Congress determines that the use of state-court proceedings to foster anticompetitive schemes is of sufficient gravity, it may simply conclude that the need for greater antitrust enforcement outweighs the need to prevent friction in our federal system and could amend § 16 to expressly authorize an injunction of such state-court proceedings.")
 An expansion to all civil proceedings would, also, overrule precedents that granted such injunctions in a number of situations. See, e. g., Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); NLRB v. Nash-Finch Co., 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); Capital Service Inc. v. NLRB, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954).
 
 
 [30]
 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)
 
 
 [31]
 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977)
 
 
 [32]
 Id. at 633, 97 S.Ct. at 2888
 
 
 [33]
 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964)
 
 
 [34]
 Ohio Bur. of Employment Services v. Hodory, 431 U.S. 471, 479, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977)
 
 
 [35]
 Id
 
 
 [36]
 280 F.Supp. 312, Rev'd 387 U.S. 423, 87 S.Ct. 1710, 18 L.Ed.2d 865 (1967)
 
 
 [37]
 387 U.S. 423, 87 S.Ct. 1710, 18 L.Ed.2d 865 (1967)
 
 
 [38]
 Justices Harlan and Stewart dissented without opinion. Id
 
 
 [39]
 420 U.S. 599, 95 S.Ct. 1200 (1975)
 
 
 [40]
 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975)
 
 
 [41]
 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977)
 
 
 [42]
 The Supreme Court did not, however, elaborate the doctrine which led it to ignore the state ruling
 
 
 [43]
 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)
 
 
 [44]
 Id. at 417, 84 S.Ct. at 466
 
 
 [45]
 Id. at 416, 84 S.Ct. 461
 
 
 [46]
 Id. at 415, 84 S.Ct. at 464
 
 
 [47]
 It was suggested that a plaintiff remitted to state court could foreclose any implication of waiver by entering an explicit "reservation" on the state court record. Such an explicit reservation was not, however, to be the Sine qua non of federal jurisdiction. 375 U.S. at 421, 84 S.Ct. at 468
 
 
 [48]
 See Averitt, Federal Section 1983 Actions After State Court Judgments, 44 U.Colo.L.Rev. 191 (1974); McCormack, Federalism and Section 1983: Limitation on Judicial Enforcement of Federal Claims, Part II, 60 Va.L.Rev. 250 (1974); Soifer & Macgill, Supra, note 11, at 1183-85 n. 173; Theis, Res Judicata in Civil Rights Act Cases: An Introduction to the Problem, 70 N.W.L.Rev. 859 (1976); Developments in the Law, supra, note 11, at 1330-1354; Note, The Relationship of Federal and State Courts, 88 Harv.L.Rev. 453 (1974)
 The Fifth Circuit has taken a somewhat inconsistent position. Compare Blunt v. Marion County Bd. of Educ., 515 F.2d 951 (5th Cir. 1975) (plaintiff allowed to raise federal claims not pressed in state court litigation previously); Maher v. City of New Orleans, 516 F.2d 1051, 1055-58 (5th Cir. 1975) (plaintiff allowed to challenge zoning ordinance as unconstitutional, despite his prior attempt to overturn it on state grounds in state court), With Jennings v. Caddo Parish School Bd., 531 F.2d 1331 (5th Cir. 1976) Cert. denied, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (dictum) (prior state court judgment conclusive as to issues which might have been litigated); Cornwell v. Ferguson, 545 F.2d 1022 (5th Cir. 1977) (same).
 Similarly, in reviewing applicable precedents, the Sixth Circuit recently adopted the observation of one commentator that "the Supreme Court has given no guidance as to claim preclusion by final state court decision in § 1983 cases and . . . as a result, 'the decisions of the lower courts teem with inconsistencies.' " Getty v. Reed, 547 F.2d 971, 975 (6th Cir. 1977). See generally, Ellis v. Dyson, 421 U.S. 426, 440-41 n. 6, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) Powell, J. dissenting.
 
 
 [49]
 Red Fox v. Red Fox, 564 F.2d 361, 363 (9th Cir. 1977), Quoting Scoggin v. Schrunk, 522 F.2d 436 (9th Cir. 1975) Cert. denied, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); See Williams v. Washington, 554 F.2d 369 (9th Cir. 1977); Spence v. Latting, 512 F.2d 93 (10th Cir. 1974) Cert. denied, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1976); Lovely v. Laliberte, 498 F.2d 1261 (1st Cir. 1974); Francisco Enterprises v. Kirby, 482 F.2d 481 (9th Cir. 1973) Cert. denied, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); Cf. Roy v. Jones, 484 F.2d 96, 98 (3d Cir. 1973) (dictum)
 
 
 [50]
 Cf. Atlantic Coast Line R. Co. v. Engineers, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). ("Although it could have tendered its federal claims to the state court, it was also free to restrict the state complaint to state grounds alone . . . from simultaneously pursu(e) claims in both courts."); See also Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (In federal anti-discrimination effort, congressional policy is to allow individual to pursue rights independently under Title VII and other applicable state and federal statutes)
 Unlike the court in Francisco Enterprises Inc. v. Kirby, 482 F.2d 481 (9th Cir. 1973), we do not read Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) as establishing a general rule applicable to § 1983 proceedings precluding federal adjudication of issues which could have been raised in state court but were not. Angel involved a diversity action in which the same state law theories which had previously formed the basis for a state suit were brought before a federal district court. Moreover, the federal issues to which Res judicata were held to apply had been asserted before the state court.
 
 
 [51]
 See also Monroe v. Pape, supra. Nor, in light of our discussion above concerning the traditional right to bring parallel actions, are we persuaded by the position that the commencement of litigation in state court amounts to a waiver of the right to proceed in federal court on other issues. This is particularly true where, as here, the federal action began before the state action had proceeded significantly toward final judgment
 
 
 [52]
 See Graves v. Olgiati, 550 F.2d 1327, 1329 (2d Cir. 1977); Mitchell v. NBC, 553 F.2d 265, 269-71, 274-77 (2d Cir. 1977); McCune v. Frank, 521 F.2d 1152, 1154-57 (2d Cir. 1975); Newman v. Board of Educ., 508 F.2d 277, 278 (2d Cir. 1975) Cert. denied, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762; Lombard v. Board of Educ., 502 F.2d 631, 635-37 (2d Cir. 1974) Cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); Kurek v. Pleasure Driveway and Park Dist., 557 F.2d 580, 594-95 (7th Cir. 1977); Reich v. City of Freeport, 527 F.2d 666, 670-72 (7th Cir. 1975). Cf. Blankner v. City of Chicago, 504 F.2d 1037, 1041-42 (7th Cir. 1974) Cert. denied, 421 U.S. 948, 95 S.Ct. 1678, 44 L.Ed.2d 101 (Res judicata held to bar suit where federal claims had been raised by Amicus curiae before state court)
 Insofar as our opinion in Roy v. Jones, 484 F.2d 96, 100-01 (1973), contains Dicta to the contrary, it should be noted that such statements were issued in the context of an attempt to relitigate issues presented to a state court after the final judgment of the state supreme court. Cf. Kauffman v. Moss, 420 F.2d 1270 (3d Cir.) Cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) (prior criminal judgment is Res judicata only on issues tendered to the jury).
 We note that the determination of which issues or claims were brought before the state court may on occasion necessitate subtle inquires. In such cases, the principles of England would bid us focus attention on the intent of the party raising claims in state court. We do not explore the potential distinctions in such cases, however, because they are not necessary to our decision here.
 
 
 [53]
 375 U.S. 419, 84 S.Ct. 467. Cf. Sweet Briar Institute v. Button, 387 U.S. 423, 87 S.Ct. 1710, 18 L.Ed.2d 865 (1967) (prior state court dismissal not Res judicata ); McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910) (prior probate proceeding not Res judicata )
 We note also that, to the extent that the prior New Jersey opinion governs this case, its holding is made applicable by the force of 28 U.S.C. § 1738. § 1738 enjoins a federal court to give the "same full faith and credit" to state court judgments "as they have by law or usage in the courts of such State." See Mitchell v. NBC, 553 F.2d 265 (2d Cir. 1977); Note, Relationship, supra note 47. But see Scoggin v. Schrunk, 522 F.2d 436, 437 n. 2 (9th Cir. 1975) Cert. denied, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976) ("It has not been contended that the question is one upon which federal courts must look to state law.").
 In any event, the Res judicata effect would seem to be no broader than that available in state court. If federal forums refuse to hear claims not barred in state courts, the purpose of repose would not be served by the federal doctrine, since the litigants could return to the state court to pursue their claims.
 The general rule in New Jersey is that subsequent suits on the same cause of action are barred by Res judicata, and a new theory of the case does not remove such bar. However, from our research it is not at all clear that New Jersey courts would consider a § 1983 suit to constitute the "same cause of action" as a suit in Superior Court to review the administrative promulgation of a regulation. See, e. g., Brick Twp. v. Vannell, 55 N.J.Super. 583, 151 A.2d 404 (1959) (suit for possession of land, involving same parties and same issues was not same cause of action as prior declaratory judgment action). There is thus considerable doubt in this case whether New Jersey courts would deem a prior judgment an adjudication of claims which could have been, but were not raised.
 
 
 [54]
 Defendants' brief in support of motion to dismiss p. 4; See District Court opinion at Aa36 and Aa38, n. 4
 
 
 [55]
 Compare plaintiffs' brief in this New Jersey Superior Court with appellants' brief here. Pp. 10-27
 
 
 [56]
 The Superior Court explicitly rejected the contention that the challenged action denied due process through the medium of an illegal "irrebuttable presumption." It also held that the regulations were "reasonable" rather than arbitrary and capricious, and "reasonably related to the felt public need." In light of the Superior Court's citation of New Jersey Chapt. Am. Inst. of Planners v. New Jersey State Bd. of Prof. Planners, 48 N.J. 581, 227 A.2d 313 (1967), and equal protection case, this appears to be a rejection of the equal protection challenge
 
 
 [57]
 That the plaintiffs offered to dismiss the state suit does not weaken such conclusion. This is so inasmuch as the offer fell short of the explicit or implicit reservation required by England, for after the offer was rejected, plaintiffs fully litigated the equal protection and due process questions without informing the state court of any hesitancy, equivocation or reservation
 We are not unsympathetic to the plaintiffs' argument that their litigation in state court was ineffective to waive their right to a federal forum on the ground that it was undertaken in response to an improper ruling that the federal forum was unavailable. Cf. England, supra, 375 U.S. at 422, 84 S.Ct. 461 (refusing to bind plaintiffs to a state court judgment where submission of claims to state court resulted from unclear federal precedent). Nonetheless, the plaintiffs had before them the fully articulated directions of England. Consequently, they could have explicitly reserved their federal claims before the state forum as they pursued their appeal in the federal courts. Instead, they chose to pursue the state court route in hopes of success on their constitutional claims before that tribunal. As a matter of litigation strategy this is understandable, for they did not know whether the present appeal would succeed. But it would seem unfair to the state, in the context here, to permit the plaintiffs now to retrace their steps.