**Allen N. BRUNWASSER, Plaintiff,**

v.

**Judge Eugene B. STRASSBURGER, III; Alexander Unkovic, Esquire; Grace S. Harris, Esquire; Joseph L. Cosetti, Esquire; Charles C. Keller, Esquire; Herbert Margolis, Esquire; Chester Byerly, Esquire; the Disciplinary Board of the Supreme Court of Pennsylvania, Allen B. Zerfoss, Esquire, Chief Disciplinary Counsel; and Edward A. Burkhardt, Esquire, Assistant Disciplinary Counsel, Defendants.**

Civ. A. No. 79–1561.

United States District Court, W. D. Pennsylvania.

May 29, 1980.

Allen N. Brunwasser, Pittsburgh, Pa., for plaintiff.

Howland W. Abramson, Charles W. Johns, Philadelphia, Pa., for Disciplinary Bd.

Marvin A. Fein, Pittsburgh, Pa., for other defendants.

## OPINION

COHILL, District Judge.

### I. *Factual Background*

From 1974 to 1979 Allen N. Brunwasser, the plaintiff in this case, was the subject of a disciplinary investigation by the Disciplinary Board of the Supreme Court of Pennsylvania. During the course of this investigation, a committee was empanelled to hear the charges of unethical conduct pending against plaintiff. That committee later issued an opinion describing Mr. Brunwasser's "warrior"-like approach to legal practice and concluding that he "has played fast and loose with the legal system, bending it to his own purpose."[1] Public censure by

the Supreme Court and probation were recommended to attempt to "cure [plaintiff's] apparent contempt for the law." Plaintiff responded to the opinion and recommendation by filing, *inter alia*, a "Motion to Dismiss Proceeding Because of Violation of the Doctrine of Fair Notice and Due Process of Law," in which he claimed his rights under the fifth, sixth, and fourteenth amendment were infringed, and a "Motion to Dismiss Proceedings Because of Lack of Separation of Judicial and Prosecution Functions." He reasserted his objections to the proceedings against him in a brief filed with the Disciplinary Board and at oral argument before the Board. Although the Board accepted the factual findings, it ultimately disagreed with the recommendation of the hearing committee and ordered a private reprimand of plaintiff.

In its "Report and Recommendation," the Disciplinary Board reviewed the disposition of various of plaintiff's motions, including the denial of claims of unconstitutional bias, infringement of free speech, vagueness of disciplinary rules, invidious discrimination, prejudice and inexperience of the prosecutor, and lack of due process and fair notice. "Respondent attacked everything conceivable that might be attacked." (Defendants' Exh. A p. 15.) The Board concluded that the hearing committee had followed procedures that satisfied due process and that violations of nine Disciplinary Rules were amply established during the seven days of hearings. (Defendants' Exh. A. pp. 7 and 16.) The Board particularly deplored plaintiff's resort to "illegal action" in filing a "patently false" suit claiming to represent someone other than himself when he actually was representing himself in order to protect his personal property. (Id. p. 15.)

Early in 1979, the case was certified to the Supreme Court of Pennsylvania. That Court affirmed the rulings of the Disciplinary Board and denied plaintiff's motion for oral argument. A petition for a writ of

---

1. All quotes from the Committee Recommendation are derived from plaintiff's complaint, pp. 24–26, and not from the original document.

certiorari filed in the Supreme Court of the United States was denied.

Having exhausted all avenues of relief in the state court, but while the petition for writ of certiorari was still pending, plaintiff filed this federal action. It purports to be an action under 42 U.S.C. §§ 1983, 1985, and 1986; 18 U.S.C. §§ 241, 242, and 371; 28 U.S.C. §§ 2201[2], 2254 and 1343(3); and under the first, fifth, eighth, ninth and fourteenth amendments to the United States Constitution. Plaintiff has also moved to amend to assert jurisdiction under 28 U.S.C. § 1331. Among those named as defendants are three individuals who complained to the Disciplinary Board about plaintiff's conduct or who were called as witnesses at the hearing, the Disciplinary Board itself, its chairman, its chief and assistant counsel, a review officer, and the members of the hearing committee that was empanelled to hear the charges against the plaintiff. The complaint incorporates by reference all the objections that were made before the Disciplinary Board of the Supreme Court (¶ J., p. 44). Relief requested by the complaint is "limited" to declaratory and injunctive relief. Among the orders sought are an injunction against defendants "so that what has happened will not happen again," an order requiring defendants "to undo the damage they have occurred and not to participate in similar conduct in the future," a declaration that the Disciplinary Board's chief counsel should no longer be permitted to prosecute cases, and a complete investigation into the state proceedings against plaintiff. At oral argument, plaintiff also requested that the defendants be enjoined from publishing or distributing copies of the confidential opinion and recommendation of the hearing committee.[3] The pith of the action is probably best articulated on the required summary form attached to the complaint (form JS–44a) wherein plaintiff explained that "[h]e respectfully asks that a private reprimand given by the State Disciplinary Board be revoked."

All defendants, citing numerous grounds, have moved to dismiss the complaint under Fed.R.Civ.P. 12(b).

## II. *Jurisdiction*

The defendants have asserted that this Court is without subject matter jurisdiction to hear this case.

Although the myriad claims raised by the plaintiff in his complaint were viewed as "many novel theories relating to the practice of law" when they were raised before the hearing committee and again before the Disciplinary Board (Defendant's Exh. A p. 15), he is not alone in turning to federal court for relief from an adverse state disciplinary action. Many frustrated attorneys, as well as many disappointed bar applicants, have taken their causes to the federal district courts. In most of these cases the federal courts have been reluctant to interfere with the operations, or alter the results, of state bar proceedings. A body of case law is emerging from decisions of several of the circuit courts of appeal which, at least in part, supports the defendants' position that this Court lacks jurisdiction.

A 1969 decision of the Court of Appeals for the Ninth Circuit, responding to a lawyer's action seeking to enjoin his suspension from practice by the Alaska Supreme Court, took a straightforward approach to the jurisdictional issue. In *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969), cert. denied 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1970), the *per curiam* opinion stated:

> [O]rders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historical relationship between state judicial systems and the members of their

---

**2.** Plaintiff cites 28 U.S.C. § 2221 in ¶ 1 of his complaint, but because he later describes this section as providing authority for declaratory relief we assume he means § 2201.

**3.** Plaintiff, however, has made that opinion a matter of public record by incorporating it into his complaint.

respective bars, and between the state and federal judicial systems. We are persuaded that it is sound.

412 F.2d at 846.

Two years after *MacKay*, the Eighth Circuit confronted a similar jurisdictional question in a § 1983 suit by an unsuccessful bar applicant. The plaintiff in *Feldman v. State Board of Bar Examiners*, 438 F.2d 699 (8th Cir. 1971), challenged the Arkansas testing procedures, claiming he was discriminated against on the basis of his religion and mental disability, and asked the federal court to review his test to determine if he had, in fact, passed. The district court dismissed Feldman's complaint as premature since he had not sought review in the state supreme court prior to instituting his federal action. In affirming, however, a panel of the Eighth Circuit held that the district court was permanently rather than temporarily unable to hear the suit: the plaintiff's *only* remedy was in pursuing his claim to the state's highest court and thereafter to the United States Supreme Court on a petition for certiorari. The circuit court explained, "[a]s the trial court properly stated, it is not an appellate court and cannot in such a case as this review state court actions." 438 F.2d at 704. However, the *Feldman* decision was complicated by the fact that the circuit court, while discussing jurisdiction, did also reach the merits of plaintiff's claims. It distinguished the plaintiffs' case from other cases stating legitimate constitutional claims:

> Undoubtedly, could plaintiff show an invidious and purposeful effort to discriminate against him or perhaps an actual discrimination even without such an intent, on any of the grounds he specifies or on any other grounds such as fraud, he well might assert a violation of his constitutional rights. There is little question but that an applicant for admission to the bar as an attorney is entitled to both substantive and procedural due process and equal protection guaranteed by the Fourteenth Amendment.

438 F.2d at 703. Thus the door of the federal district court was closed to some, but not all, disappointed bar applicants.

A subsequent Tenth Circuit decision, although not discussing *Feldman* or *MacKay*, offered some analytical explanation for the jurisdictional dilemma. *Doe v. Pringle*, 550 F.2d 596, 597 (10th Cir. 1976), cert. denied 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977), recognized a "subtle but fundamental distinction" between two types of claims that might be brought against a state board of bar examiners [or disciplinary board]: (1) a constitutional challenge to the state's rules and regulations governing admission [or discipline], and (2) a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. Although federal courts do exercise jurisdiction over constitutional challenges to rule-making authority or administration of rules, the same is *not* true where a plaintiff seeks district court review of a state court's decision in a particular case. "[T]he latter claim may be heard, if it all, exclusively by the Supreme Court of the United States." 550 F.2d at 597. *Doe v. Pringle* seems to stand for the proposition that an allegation of ongoing unconstitutional procedure by a state board licensing or disciplining lawyers will land a plaintiff in the district court while an attack on a particular result will not. The difficult question remaining is how to respond to a complaint embodying both claims or using one to bolster the other.

Two 1977 circuit opinions continued the trend of upholding state adjudications, but on different rationale. In *Richardson v. McFadden*, 563 F.2d 1130 (4th Cir. 1977) (en banc), cert. denied 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), several black law school graduates who had failed the South Carolina bar examination brought a federal action for declaratory and injunctive relief. After a hearing, the district court denied relief. A panel of the Fourth Circuit reversed as to some of the plaintiffs, finding evidence of arbitrary and capricious action, and directed that they be certified as having passed the exam. 540 F.2d 744 (4th Cir. 1976). On rehearing *en banc*, the majority decided the case substantively against all the plaintiffs, finding insufficient proof of

unconstitutional discrimination. However, the concurring opinion of three judges would have held that the district court was without subject matter jurisdiction. They believed that the Fourth Circuit should have followed the teachings of the Eighth, Ninth, and Tenth Circuits in *Feldman, MacKay,* and *Doe*—that review lies exclusively in the United States Supreme Court—and would have dismissed the instant claims without reaching the merits.

In *Grossgold v. Supreme Court of Illinois,* 557 F.2d 122 (7th Cir. 1977), a panel of the Seventh Circuit reached the conclusion that the *Richardson* concurrence urged. Affirming the dismissal of a case brought by an attorney who was suspended from practice for a felony conviction despite a presidential pardon, the court relied on several of the cases discussed above. Thus, the panel concluded that "plaintiff pursued his proper remedy in the Supreme Court of Illinois and subsequently in the Supreme Court of the United States and is bound by the adverse result." 557 F.2d at 125. The plaintiff's argument in support of district court jurisdiction was rejected:

> He asserts that there was jurisdiction because otherwise there would be no judicial forum to pass upon his federal constitutional claim that the three-year suspension granted by a state "administrative agency" unconstitutionally interfered with the presidential pardon . . . If no court could review the constitutional question, the alleged constitutional deprivation could be redressed in district court under the Section 1343(3) subject matter jurisdiction grant. If indeed judicial review of a claimed constitutional deprivation were cut out entirely, grave constitutional problems would be posed . . . The flaw in plaintiff's contentions is that it overlooks the judicial review already accorded him. The Illinois Supreme Court, which is fully competent to pass on federal constitutional questions, has passed upon this constitutional question, and its decision became final when the

Supreme Court of the United States denied certiorari. Since the Illinois Supreme Court was bound to pass on the constitutional question posed by the pardon, the court's denial of Grossgold's petition for reconsideration necessarily implied that the constitutional question was being decided against the plaintiff. Consequently, there was no arguable constitutional "deprivation" . . . The doctrine of *res judicata* bars any further litigation of this question.

557 F.2d at 124–125 (citation omitted).

A very recent Florida district court case, *Kimball v. Florida Bar,* 465 F.Supp. 925, 927 (S.D.Fla.1979), agreed with those circuit court cases holding that state bar procedures for screening or disciplining attorneys are subject to constitutional review only by the United States Supreme Court on writs of certiorari to state supreme courts. District Judge Roettger also noted that two earlier Supreme Court cases in which bar procedures were substantively scrutinized for constitutional flaws, *Konigsberg v. State Bar of California,* 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957), and *Schware v. Board of Bar Examiners of State of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), were cases which reached the Supreme Court directly from state supreme courts.

■ The parties have directed us to no Third Circuit decision which is directly on point on the jurisdictional issue, nor has our own research uncovered one.[4] After review of the cases discussed above, we have concluded that the distinction developed between suits challenging unconstitutional procedures and suits challenging specific results is very difficult to implement. A better approach would be a universal rule which provides that the *only* route for vindication of constitutional challenges to state bar disciplinary procedures is by appeal to the state's highest court and subsequent petition for writ of certiorari. This appears

---

**4.** We anticipate, however, that the Third Circuit will soon have an opportunity to consider the matter.

to be the current law in the Seventh and Ninth Circuits. *See Grossgold* and *MacKay, supra.*

In the instant case, plaintiff has attempted to avoid the adverse results of the proceedings before the Disciplinary Board, the refusal of the Pennsylvania Supreme Court to reconsider the matter, and the denial of certiorari by the United States Supreme Court, by restating his challenges as a civil rights suit. What he obviously wants, however, is a *reversal* of the reprimand given him by his professional peers in the Commonwealth of Pennsylvania. We believe that we lack jurisdiction to reopen the case against him in the guise of a civil rights action. This holding disposes of plaintiff's claims under 42 U.S.C. §§ 1983, 1985 and 1986, 28 U.S.C. §§ 2201 and 1343(3), and under the various constitutional amendments. Plaintiff's allegations of jurisdiction under 18 U.S.C. §§ 241, 242 and 371 (criminal conspiracies) and under 28 U.S.C. § 2254 (habeas corpus for those in state custody) are clearly frivolous, if not irresponsible, and need not be addressed.

### III. *Res Judicata—Collateral Estoppel*

■ For the sake of argument and judicial economy, we also will reach the defendant's substantive argument. One issue clearly transcends and requires dismissal of this suit: the preclusive effect of the prior state judgment.

Several of the cases that we reviewed earlier seem to treat the topics of jurisdiction and *res judicata* as one. *E. g., Grossgold, supra,* 557 F.2d at 125. Although both lead to the same result, we believe they are independent legal questions.

*Res judicata* and collateral estoppel were both asserted by defendants during oral argument. Both doctrines are intended to avoid repetitious litigation and assure the finality of judgments. Because the prior litigation in this case took a different form and fewer parties were involved, it might be argued that *res judicata* is technically inapplicable. However, collateral estoppel—issue preclusion—is clearly applicable in a case where we have diligently searched for an issue currently raised that was not raised and vigorously pursued in the prior action.

In addition to the usual purposes of collateral estoppel—economy, finality, and reliance—that militate against rehearing the same claims, considerations of comity are also present here. A recent legal commentary suggests that allowing plaintiffs to impeach state court judgments through civil rights actions would deny state courts the ability to decide with finality questions within their jurisdiction and would hinder the states in enforcing their laws; "only if one believed that state courts were systematically either unwilling or unable to enforce federal constitutional rights could such costs be justified." Note, *Developments in the Law—Section 1983 and Federalism,* 90 Harv.L.Rev. 1133, 1336 (1977). Although the plaintiff here seeks injunctive as well as declaratory relief, and we have stated the problem in terms of collateral estoppel rather than *res judicata,* what is clearly at stake is the integrity of the reprimand which was authorized by the Supreme Court of Pennsylvania and left undisturbed by the denial of certiorari.

*New Jersey Educ. Ass'n v. Burke,* 579 F.2d 764 (3d Cir. 1978), *cert. denied* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978), relied upon by plaintiff, is distinguishable and is, in fact, more helpful to his opponents. In *Burke,* the Third Circuit reviewed a district judge's abstention from a § 1983 action in deference to a pending state civil proceeding in which the plaintiffs had "at least some prospect of vindicating their constitutional rights." Reversing, the court of appeals discussed the principles behind abstention and a court's duty to balance federal and state interests. Since the federal suit was a class action challenging on constitutional grounds new regulations of the New Jersey Board of Education and the pending state proceeding was a statutory appeal, Judge Adams wrote that "[n]either the traditional equitable aversion toward intermeddling in criminal processes, nor the state's interest in enforcing its laws in its own forum is present." 579 F.2d at 768. Although the state proceedings in-

volved in the instant case were not criminal in the usual sense, they invoke our hesitancy to intermeddle since they so clearly involve a matter vital to the effective operation of the state court system; moreover, our interference would reduce the ability of the Pennsylvania Supreme Court to enforce its disciplinary rules.

The *Burke* court went on to consider whether the pending and parallel state action would have an effect on the federal action. After reviewing significant appellate decisions, Judge Adams acknowledged that "a restrictive concept to the right to a federal forum has significant advantages," such as discouraging vexatious litigation and conserving judicial resources. 579 F.2d at 774. *Burke* ultimately held that a state court judgment forecloses a § 1983 litigant from raising grievances in federal court only if such claims have been pressed before, and decided by, a state tribunal. *Id.* Or, as the United States Supreme Court said in an earlier abstention case, "we see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the district court." *England v. State Board of Medical Examiners*, 375 U.S. 411, 419, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964). In the case before us plaintiff clearly and unreservedly pursued his constitutional claims before the state board and the state's highest court. We think it makes no difference that plaintiff was not a voluntary party in the state proceedings since he did voluntarily press his constitutional claims there as well as in his petition for certiorari.

We recognize that the state of the law regarding the preclusive effect of prior state judgments on § 1983 cases "teem[s] with inconsistencies." *See Burke,* 579 F.2d at 773, n. 48, and cases cited therein. *See also* Comment, Res Judicata and Section 1983: the Effect of State Court Judgments on Federal Civil Rights Actions, 27 U.C.L.A. Law Rev. 177, 182–196 (1979). However, we believe that the kind of repetitious, vexatious, and wasteful litigation feared by both the Supreme Court and the Third Circuit could not be better exemplified than by the suit before us.

Believing not only that comity requires us to avoid reopening a state disciplinary proceeding, but also that Mr. Brunwasser is bound by the rulings on the constitutional claims which he pursued in every way possible before the state tribunal, we must dismiss this suit. We need not reach the numerous other issues raised by the defendants.

### IV. *Other Motions*

Plaintiff's Motion to Amend, adding an allegation of jurisdiction under 28 U.S.C. § 1331 and a claim of damages in excess of $10,000 will be granted; however, that claim must be dismissed since all the claims asserted in the complaint have succumbed to parts II and III of this opinion.

Plaintiff's Motion to have Circuit or Other Judge Appointed to Adjudicate this Matter will be denied as it was denied when earlier raised at oral argument. Besides being moot, the matters raised therein are totally irrelevant to this action.

An appropriate order follows.