**Charles L. COOK d/b/a Cook's Ambulance Service, Inc., a Mississippi Corporation, Plaintiff,**

v.

**BOARD OF SUPERVISORS OF LOWNDES COUNTY, MISSISSIPPI, et al., Defendants.**

**Civ. A. No. EC 91–156–D–D.**

United States District Court, N.D. Mississippi, E.D.

June 4, 1992.

---

**39.** The instant case is set for bench trial on December 14, 1992.

Ronald D. Michael, Booneville, Miss., for plaintiff.

Armstrong Walters, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Plaintiff corporation, Cook's Ambulance Service, Inc. ("Cook"), is suing under 42 U.S.C. § 1983, alleging a constitutional deprivation of due process.[1] Pursuant to Fed.R.Civ.P. 12(b)(1), defendants Lowndes County Board of Supervisors ("Board"), et alia move this court to dismiss the § 1983 complaint for lack of subject matter jurisdiction. Included with defendant Board's motion is its answer asserting collateral estoppel, res judicata and failure to state a claim[2] upon which relief can be granted as affirmative defenses. (Defs.' Answer, p. 4 of unnumbered pages.) Based upon a thorough review of the parties' pleadings, the court is of the opinion that principles of res judicata and claim preclusion are operable. Furthermore, plaintiff's § 1983 complaint is not viable. Therefore, the cause of action is dismissed with prejudice.

## I. *Factual Summary and Procedural Background*

Plaintiff, a private corporation, had been providing Lowndes County with ambulance services for approximately four years under a contract with defendant Board of Supervisors that expired April 1, 1988. Rather than renew the agreement, defendants passed a resolution to obtain ambulance services through the Golden Triangle Regional Medical Center (GTRMC), a public agency established in 1942. Consequently, plaintiff petitioned the Lowndes County Circuit Court for a writ of prohibition on or about February 10, 1988. In support of its petition, plaintiff relied on a state law provision favoring privately run ambulance services deemed adequate over publicly run operations. *See* Miss.Code Ann. § 41–55–7. The Circuit Court denied the petition and plaintiff appealed. The Mississippi Supreme Court reversed and remanded, holding that defendants failed to determine the adequacy of plaintiff's ambulance services within the meaning of § 41–55–7.

With its state action underway, plaintiff subsequently filed its § 1983 complaint of alleged due process violations in this federal district court on or about May 30, 1991. According to defendants, plaintiff's complaint concerns an alleged violation of a state created right, placing it outside the parameters of 42 U.S.C. § 1983. Invoking the doctrine of collateral estoppel, defendants contend plaintiff's § 1983 complaint is identical to the prior state court cause of action and therefore cannot be relitigated in federal court. Plaintiff, of course, refutes defendants' collateral estoppel theory, claiming the § 1983 complaint concerns due process violations raised for the first time in the federal litigation. Aside from collateral estoppel, defendants argue res judicata precludes plaintiff from pursuing a separate § 1983 complaint in a federal forum after litigating a similar cause of action in state court. In response, plaintiff asserts it lacked a full and fair opportunity to litigate the federal claim in state court

---

**1.** The complaint fails to specify whether the alleged deprivation concerns procedural or substantive due process.

**2.** Fed.R.Civ.P. 12(b)(6)

and therefore should be permitted to proceed with its § 1983 action.

## II. *Legal Discussion*

### A. *The 12(b)(1) Motion to Dismiss Treated As a 12(c) Motion for Judgment on the Pleadings*

Although entitled, "Motion to Dismiss for Lack of Jurisdiction," defendants' motion seeks a judgment on the pleadings. Motions for judgment on the pleadings are properly brought via Fed.R.Civ.P. 12(c). However, it is permissible to treat motions to dismiss as motions for judgment on the pleadings if the pleadings have been closed. 2A JAMES WILLIAM MOORE, MOORE'S FEDERAL PRACTICE par. 12.15 (2d ed. 1991). If no counterclaims or cross-claims are pleaded in the answer, the pleadings are considered closed, unless the court orders a reply. *Id.* Although the pleadings appear to be closed in the instant case, the court nevertheless declines to treat defendants' motion to dismiss as a request for judgment on the pleadings.

### B. *Treating 12(b)(1) Motions as 12(b)(6) Motions*

When possible, courts generally strive to decide cases on the merits. Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not on the merits. MOORE, supra, par. 12.07 [2.–1]. Therefore, when presented with a 12(b)(1) motion to dismiss arguing the absence of a federal question, courts generally agree the preferable practice is to assume jurisdiction exists and proceed under 12(b)(6) in order to reach the merits of the case. MOORE, supra. *See Jones v. State of Georgia*, 725 F.2d 622 (11th Cir.1984), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 316 (If party moves under both Rules 12(b)(1) and 12(b)(6) and 12(b)(1) motion challenges existence of federal cause of action, courts generally find jurisdiction and proceed under 12(b)(6) to determine merits). By following this approach, the court provides plaintiff with added protection, considering that all of plaintiff's factual allegations are presumed to be true under 12(b)(6). MOORE, supra; *see Williamson v. Tucker*, 645 F.2d 404 (5th Cir.), *cert. denied*, 454

U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (determining questions under 12(b)(6) rather than 12(b)(1) grants additional protection to plaintiff). Since defendants raise a 12(b)(6) defense in their answer, the court will treat the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction as a 12(b)(6) motion to dismiss for failure to state a claim.

### C. *The 12(b)(6) Motion to Dismiss Standard*

In ruling on a 12(b)(6) motion to dismiss, the court must afford the plaintiff every reasonable inference in favor of stating a prima facie case for recovery. Thus, a complaint may not be dismissed unless it appears certain that no relief can be granted under any set of facts in support of plaintiff's allegations. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### D. *42 U.S.C. § 1983*

By definition, "§ 1983 does not create substantive rights; rather, it merely provides a remedy for deprivations" of federal constitutional rights. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991). The statutory provision imposes civil liability only upon persons "who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subject, or cause to be subjected, any citizen ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws ..." 42 U.S.C. § 1983. As a prerequisite to maintaining a § 1983 claim, plaintiff must establish: 1) that defendants were acting under color of state law, and 2) that while acting under color of state law, the defendants violated plaintiff's rights protected by the United States Constitution or United States laws. *McDonald v. Board of Mississippi Levee Commissioners*, 646 F.Supp. 449, 462 (N.D.Miss.1986), *aff'd*, 832 F.2d 901 (5th Cir.1987), *citing Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled on other grounds in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *Augustine v. Doe*, 740 F.2d 322,

324 (5th Cir.1984). Plaintiff Cook asserts it is entitled to redress pursuant to § 1983 based on defendants' alleged violation of Mississippi law. Specifically, plaintiff claims defendants failed to follow § 41–55–7 entitled, "Effect of existence of adequate private ambulance service; public subsidies." The provision states:

> If there is in operation an adequate privately run ambulance service, then the governing authorities are hereby prohibited from contracting for ambulance services to be run by the public body. The governing authorities may, however, subsidize such existing privately run ambulance service, in their discretion, if they deem necessary to keep such service in operation.

§ 41–55–7. Defendants decided to drop plaintiff without determining whether plaintiff was providing adequate services within the meaning of Mississippi law. Failure to do so, plaintiff argues, "constitute[s] a deprivation of plaintiff's federally protected rights without due process." (Pl.'s Compl. par. XVII.)

■ Violation of a state law ordinarily is not cognizable under § 1983. *Schepp v. Fremont County, Wyo.*, 685 F.Supp. 1200, 1203, (D.Wyo.1988), *aff'd*, 900 F.2d 1448 (10th Cir.1990). However, when a state statute supplies the basis for the constitutional claim, it may be cognizable. *Id.* For instance, state law can create a property interest protected by the Fourteenth Amendment due process clause. *See, e.g., Davis v. Scherer*, 468 U.S. 183, 193, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984); *Arcoren v. Peters*, 829 F.2d 671, 676–77 (8th Cir.1987); *Myers v. Morris*, 810 F.2d 1437, 1470 (8th Cir.1987); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2nd Cir.1985). Thus, the immediate questions for the court are whether § 41–55–7 creates a property interest, and if so, whether plaintiff has been deprived of it without due process.

### E. *Plaintiff's Due Process Claim*

Plaintiff's complaint contains a vague claim of due process violations. It fails to specify whether the suffered deprivation concerns substantive or procedural due process. From what the court can glean from the complaint, it appears that plaintiff ambulance service operation objects to the nonrenewal of its contract as violating the state law prohibition against a publicly run ambulance operation when adequate private service is available. (Pl.'s Compl., par. XVI–XVII). "An alleged violation of state law unaccompanied by some more precise claim of federal right than a general claim of lack of due process is not the sort of deprivation recognizable under 42 U.S.C. § 1983." *Housley v. North Panola Consol. School Dist.*, 656 F.Supp. 1087, 1092 (N.D.Miss.1987) *citing McDowell v. Texas*, 465 F.2d 1342, 1345–46 (5th Cir.1971); *see Boston Env. Sanitation Inspectors Ass'n v. Boston*, 794 F.2d 12, 13 (1st Cir.1986) (mere violation of state statutory requirement does not offend federal constitutional due process). Recognizing its obligation under Fed.R.Civ.P. 12(b)(6) to afford plaintiff every reasonable inference in favor of stating a prima facie case for recovery, however, the court presumes plaintiff perceives defendants' nonrenewal of its contract for plaintiff's ambulance services as arbitrary and capricious behavior that violates fair notions of due process guarantees. Operating under this premise, the court conducts its constitutional analysis accordingly.

■ The court assumes plaintiff's due process claim is grounded in the Fourteenth Amendment rather than the Fifth, given defendants' state entity status. To be entitled to due process, however, plaintiff needs to present facts showing a deprivation of a property interest[3]. *Mahone v. Addicks Utility District of Harris County*, 836 F.2d 921, 929 (5th Cir.1988). The Fourteenth Amendment prevents states from depriving persons of their property interest without due process of law. *Za-*

---

**3.** The Fourteenth Amendment also prohibits deprivation of life and liberty interests without due process. However, deprivation of a property interest would be the only plausible argument available to plaintiff under these facts.

*roogian v. Town of Narragansett,* 1988 WL 148434, \*3 (D.R.I.1988). The immediate question for the court then is, "Does plaintiff have a property interest in continued contractual relations with defendants to provide ambulance services?" In the opinion of the court, it does not. At most, plaintiff has an expectation of contract renewal. Expectation is an insufficient interest to warrant Fourteenth Amendment protection. *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir.1991). To have a property interest protected under the Fourteenth Amendment, the United States Supreme Court explained in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, (1972):

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He, must, instead, have a legitimate claim of entitlement to it.

All plaintiff has here is an expectation of continued contractual relations with defendants to provide ambulance services. As stated above, Fourteenth Amendment protection does not extend to mere expectations. Breaches or nonrenewals of contracts do not amount to deprivations of property without due process actionable under § 1983. *Boston,* 794 F.2d at 13, *citing Cloutier v. Town of Epping,* 714 F.2d 1184, 1191 n. 4 (1st Cir.1983); *Casey v. Depetrillo,* 697 F.2d 22 (1st Cir.1983); *Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981). Since the court finds no property interest is vested in plaintiff warranting constitutional due process, it does not reach the issue of whether defendants' nonrenewal without determining the adequacy of plaintiff's ambulance services was arbitrary or capricious behavior. As the U.S. Supreme Court held in *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979):

> The first inquiry in any § 1983 suit, ..., is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws [42 U.S.C. § 1983].' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial.

Having found no property interest, the court is of the opinion that plaintiff fails to present a viable § 1983 claim. Even assuming hypothetically that plaintiff had a protected property interest and the alleged state law violation gave rise to a constitutional claim that could be framed within § 1983, principles of res judicata and claim preclusion would preclude this court from hearing it.

### F. *Claim Preclusion in the Federal Courts: The Full Faith and Credit Clause, U.S.C. Art. 4, § 1 and 28 U.S.C. § 1738*

28 U.S.C. § 1738 has been construed as requiring federal courts to "give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." *Collard v. Incorporated Village of Flower Hill,* 604 F.Supp. 1318, 1322 (E.D.N.Y. 1984), *quoting Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980). The section provides:

> ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken ...

28 U.S.C. § 1738. In conjunction with 28 U.S.C. § 1738, the court considers the companion doctrines of res judicata and collateral estoppel.

### G. *Res Judicata and Collateral Estoppel*

 Res judicata and collateral estoppel both deal with the question of whether the adjudication of certain matters is precluded by a prior adjudication. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 465–68 n. 6, 102 S.Ct. 1883, 1889–90 n. 6, 72 L.Ed.2d 262 (1982). Under the doctrine of res judicata, parties and their privies are precluded from relitigating claims that were or could have been raised in a prior action and have reached a final judgment on the merits. *Metro Charities, Inc. v. Moore,* 748 F.Supp. 1156, 1159 (S.D.Miss.1990); *Federated Dep't. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981); *see*

*also Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (parties also bound on matters that could have been raised); *Cromwell v. County of Sac*, 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877) (same).

Collateral estoppel is a derivative of res judicata with a more narrow focus. While res judicata encompasses questions which might have been litigated, collateral estoppel applies only to questions actually litigated in a prior suit. *Metro Charities*, 748 F.Supp. at 1160; *see Johnson v. Bagby*, 252 Miss. 125, 171 So.2d 327 (Miss.1965). Once a court has decided an issue essential to its judgment, collateral estoppel precludes the issue from being relitigated in another suit on a different cause of action involving a party to the first case. *Metro*, 748 F.Supp. at 1159; *see Ingalls Shipbuilding Div., Litton Systems, Inc. v. Parson*, 495 So.2d 461, 463 (Miss.1986); *Lyle Cashion Co. v. McKendrick*, 227 Miss. 894, 87 So.2d 289, 293 (Miss.1956); *Lee v. Wiley Buntin Adjuster, Inc.*, 204 So.2d 479 (Miss.1967); *see Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The doctrine has the effect of establishing conclusively questions of law or fact that have received a final judgment for the purposes of a later suit. *Garraway v. Retail Credit Co.*, 244 Miss. 376, 141 So.2d 727 (Miss.1962). Besides protecting litigants from the burden of relitigation, collateral estoppel serves the purpose of promoting judicial economy. *State Farm Automobile Insurance Company v. Universal Underwriters Insurance Co.*, 601 F.Supp. 286, 288 (S.D.Miss.1984). Other than the usual purposes of collateral estoppel that militate against rehearing the same claims such as judicial economy, finality, and reliance, considerations of comity are also operative here. *Brunwasser v. Strassburger*, 490 F.Supp. 959, 964 (W.D.Pa.1980).

## H. *The Doctrine of Claim Preclusion applied to § 1983 Actions*

Federal courts have faced problems in setting limits for applying the doctrine of claim preclusion. Preventing disappointed parties from relitigating the same claims is always a valid reason for applying the doctrine. Difficulties arise, however, in deciding when matters not actually raised in the prior proceeding should also be precluded. Prior to fairly recent pronouncements from the U.S. Supreme Court "the preclusive effect of prior state court judgments on § 1983 suits ... evoked a spectrum of overlapping and inconsistent precedent and commentary." *New Jersey Ed. Ass'n v. Burke*, 579 F.2d 764, 773, (3rd Cir.1978). For a period of time, the Fifth Circuit's position on the issue varied from case to case. *Id.* at 773, fn. 48. Guided by the principles of res judicata, the Ninth Circuit Court of Appeals developed a relatively clear line of cases generally holding that where a federal constitutional claim is based on the same asserted wrong [which] was the subject of a [prior] state action, and where the parties are the same, res judicata will bar the federal constitutional claim, whether it was asserted in state court or not. *Red Fox v. Red Fox*, 564 F.2d 361, 363 (9th Cir.1977), *quoting, Scoggin v. Schrunk*, 522 F.2d 436 (9th Cir.1975) *cert. denied*, 423 U.S. 1066, 96 S.Ct. 807, 46 L.Ed.2d 657 (1976); *see Williams v. Washington*, 554 F.2d 369 (9th Cir.1977). The justification for giving state adjudications preclusive effect under § 1738 is most clear when a plaintiff's federal claim would have been within the concurrent jurisdiction of a state court, but plaintiff failed to present it when suing there. *Shreve*, "Preclusion and Federal Choice of Law," 64 Tex.L.Rev. 1209, April 1986, at 2.

The § 1983 case presently before the court represents "the kind of repetitious, vexatious, and wasteful litigation" res judicata and claim preclusion were designed to combat. *Brunwasser*, 490 F.Supp. at 965. In *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 83, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984), the U.S. Supreme Court extended its holding in *Allen*, refusing to imply an exception to § 1738 where § 1983 complaints were concerned. The procedural scenario in *Migra* closely resembles the litigation pattern in the instant matter. After suing her em-

ployers in state court for wrongful discharge and breach of contract, plaintiff school administrator *Migra* brought a § 1983 action against the same defendants in federal court. *Migra,* 465 U.S. at 78–79, 104 S.Ct. at 894–95, 79 L.Ed.2d at 60. Noting that she had failed to present her § 1983 claim in the prior state adjudication, the High Court held she was subject to any claim preclusion existing under state law. *Migra,* 465 U.S. at 85, 104 S.Ct. at 898, 79 L.Ed.2d at 64. In so doing, the Court reinforced its earlier stated position in *Allen* and again rejected the argument that § 1983 operated as an exception to § 1738. *Migra,* 465 U.S. at 84, 104 S.Ct. at 897–98. The court noted that plaintiff Migra's argument for an exception was the same theory advanced in *Allen:* "That state-court judgments should have less preclusive effect in § 1983 suits than in other federal suits because of Congress' express concern over the adequacy of state courts as protectors of federal rights." *Migra,* 465 U.S. at 83–84, 104 S.Ct. at 897–98. Although the legislative history of § 1983 includes evidence of concern over civil rights enforcement in state courts, *see Allen,* 449 U.S. at 98–99, 101 S.Ct. at 417, 66 L.Ed.2d at 316 ("one … motive behind enactment of § 1983 was grave congressional concern that state courts had been deficient in protecting federal rights"), this is an inadequate basis for implying a suspension of § 1738 or the common-law rules of collateral estoppel and res judicata in § 1983 actions. *Allen,* 449 U.S. at 99, 101 S.Ct. at 417. "Much clearer support than this would be required to hold that § 1738 and the traditional rules of preclusion are inapplicable to § 1983 suits." *Allen,* 449 U.S. at 99, 101 S.Ct. at 417. Stretching its position in *Allen* concerning the relationship between § 1983 and § 1738 even further, the Court stated, "It is difficult to see how the policy concerns underlying § 1983 would justify a distinction between the issue preclusive and claim preclusive effects of state court judgments." *Migra* 465 U.S. at 83, 104 S.Ct. at 897. *See also Jennings v. Caddo Parish School Board,* 531 F.2d 1331 (5th Cir.1976) (Res judicata or collateral estoppel barred federal court from considering

teacher's § 1983 suit where underlying constitutional issues had already been litigated in competent state court); *Garner v. Louisiana State Board of Education,* 489 F.2d 91 (5th Cir.1974), *cert. denied,* 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (same).

The argument that § 1738 implies a suspension in § 1983 to accomplish federal objectives is without merit. Section 1983 does not suggest that Congress intended to assure a federal-court setting for § 1983 litigation or that Congress intended to guarantee civil rights litigants the opportunity to litigate all their issues from an affirmative posture. *Allen,* 449 U.S. at 97–99, 101 S.Ct. at 416–17; *see* Currie, "Res Judicata: The Neglected Defense," 45 U.Chic.L.Rev. 317, 328 (1978) ("No language in § 1983 remotely suggests any modification of res judicata."). Federal court jurisdiction in § 1983 cases is concurrent rather than exclusive. In enacting § 1983, Congress was adding to the jurisdiction of federal courts, not subtracting from that of the state courts. *Allen,* 449 U.S. at 99, 101 S.Ct. at 417; *see also Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (federal remedy is supplementary to state remedy). In providing a federal forum for vindicating violations of federal rights, Congress did not intend to deprive state courts from hearing § 1983 complaints. *See* Shreve, supra n. 21. Due process does not require federal courts to get involved in every action alleging a federal constitutional or civil rights claim. *Cornwell v. Ferguson,* 545 F.2d 1022, 1024 (5th Cir.1977). State courts and other tribunals are fully competent to resolve federal questions properly before them. *Id.* Plaintiff Cook freely and voluntarily chose to first seek relief from the state courts of Mississippi. In the present federal litigation, plaintiff "does not claim that the state court would not have adjudicated [its] federal claim had [it] presented [it] in [its] original suit in the" Lowndes County Circuit Court of Mississippi. *Migra,* 465 U.S. at 84, 104 S.Ct. at 898. Plaintiff could just as easily "have obtained a federal forum for [its] federal claim by litigating it first in [this] federal court." *Migra,* 465 U.S. at 85, 104 S.Ct. at 898. "Section 1983, howev-

er, does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on [its] state claims and then turn to federal court for adjudication of [its] federal claims." *Id.* The Fifth Circuit has held that a state court judgment is conclusive as to all matters which were litigated or *might have been litigated in the first action.* *Cornwell,* 545 F.2d at 1024, *citing Garner,* 489 F.2d 91; *Frazier v. E. Baton Rouge Parish School Board,* 363 F.2d 861 (5th Cir. 1966) (emphasis added). Similar to collateral estoppel and res judicata, the doctrine of claim preclusion prevents parties to final judgments from relitigating claims and may also foreclose the litigation of new claims. A new claim is precluded when it is so closely related to a previously raised claim that together they constitute a cause of action in a larger sense. Shreve, "Preclusion and Federal Choice of Law," 64 Tex.L.Rev. 1209, April, 1986, at 2. This expanded concept of a claim is intended to signify all of the alternative legal theories and the full scope of the remedies generated by the facts of the original controversy. *Id.* Whether the entire claim, in this broad sense was actually put forward in the prior case is immaterial; what matters is whether it could have been put forward. *Id.; cf. Migra v. Warren City School District Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) ("Claim preclusion refers to effect of prior judgment in foreclosing litigation of matter that never has been litigated, because it should have been advanced in an earlier suit."). The court is of the opinion that plaintiff could have easily included the § 1983 cause of action in the prior state court proceeding.

With its decisions in the *Allen* and *Migra* cases, the Supreme Court tremendously undercut its earlier decision in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The high Court had held in *England* that a federal court claimant, required by the *Pullman*[4] abstention doctrine to present his state-law issues in

state court, could thereafter reintroduce his federal issues in federal court if certain criteria had been met. *See England,* 375 U.S. at 421, 84 S.Ct. at 467–68 (litigant with state and federal claims could pursue disposition of federal claims in federal district court if raised both initially in state court; and adjudication of state issues didn't moot case; and if litigant revealed intention to return to federal court with federal claim if state court decision on state issue was unfavorable). *England* in effect suspended operation of § 1738, shielding any subsequent federal law adjudication in federal court from the claim or issue preclusive effects of a state court judgment. Now that it has been overshadowed by *Allen* and *Migra,* "the *England* decision is simply wrong." Shreve, supra.

 In applying claim preclusion to plaintiff's § 1983 complaint, the court follows the RESTATEMENT (SECOND) OF JUDGMENTS which states:

When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.

RESTATEMENT (SECOND) OF JUDGMENTS § 25 comment e (1982); *see also id.* § 86 comment f ("[F]ailure to assert an alternative federal basis for a claim that could rest on both federal and state law generally results in claim preclusion."). Allowing plaintiffs to impeach state court judgments through civil rights actions would deny state courts the ability to decide with finality questions within their jurisdiction and would hinder the states in enforcing their laws. *Brunwasser,* 490 F.Supp. at 964.

### III. *Conclusion*

In conclusion, plaintiff has failed to advance a viable claim under 42 U.S.C.

---

**4.** Under the *Pullman* doctrine, the outcome and consequences of state adjudications may eliminate the need for federal constitutional litiga-

tion. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

§ 1983. The state law violation complained of does not rise to a constitutional level and therefore, is not cognizable under the remedial statutory provision. Plaintiff can prove no set of facts in support of his § 1983 claim against defendant Board which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 96 (1957); *U.S. v. Uvalde Consol. Independent School District,* 625 F.2d 547, 549 (5th Cir.1980), *cert. denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981). Therefore, defendants are entitled to a dismissal of the complaint alleging a § 1983 claim against it. Furthermore, even if a valid § 1983 claim did exist, principles of claim preclusion and res judicata would operate to bar the action from this court.

An order in accordance with this memorandum opinion will be entered.